297 So.2d 532 (1974)
Edmund R. VALES
v.
Harold E. DOLEY et al.
No. 6258.
Court of Appeal of Louisiana, Fourth Circuit.
July 3, 1974.
Rehearing Denied August 1, 1974.
Writ Refused October 18, 1974.
Morphy, Freeman, Holbrook & Faulkner, A. D. Freeman, New Orleans, for Edmund R. Vales, plaintiff-appellant.
Thierry & Gerdes, Louis A. Gerdes, Jr., New Orleans, for Harold E. Doley, defendant-appellee.
*533 Revius O. Ortique, Jr., New Orleans, for D. M. Greenup, doing business as D. M. Greenup Realty Co. and American Employers Ins. Co., defendants-appellees.
Before SAMUEL, GULOTTA and STOULIG, JJ.
STOULIG, Judge.
Plaintiff, Edmund R. Vales, filed suit to recover $4,800 in liquidated damages for the breach of a written agreement to buy real estate. Named defendants[1] were Harold E. Doley, the purchaser who allegedly defaulted, and D. M. Greenup, doing business as D. M. Greenup Realty Company, the broker who submitted to plaintiff the signed offer to buy. Defendant Doley admitted his signature in his answer, but, in essence, averred Greenup fraudulently and without authority submitted an offer on a form he had signed for another purpose. Greenup defended on alternative theories that plaintiff either did not own the property or misrepresented its value by concealing an impending change in zoning that would substantially reduce its value. From a judgment dismissing his suit against both defendants, plaintiff has appealed.
There is irreconcilable testimony from the litigants concerning the circumstances surrounding this transaction which we will recount only where we need do so for clarity. For the purpose of setting forth the issues, we will simply state our factual finding based on our analysis of the record.
Plaintiff, owner of seven squares of ground that will be hereinafter referred to as the North Rampart Street property, drafted plans to construct a 24-unit apartment complex on this site that he never carried into effect. When the New Orleans City Council passed a Comprehensive Zoning Ordinance, plaintiff's property was affected to the extent that the multidwelling units would not be permitted unless construction began prior to August 1971. The Council authorized the change in zoning to reduce the density of habitation in given areas in the City.
In May 1971, approximately three months before the zoning change was to become effective, J. T. LaNasa, a realtor, asked Greenup to enter into a joint venture with him to buy the North Rampart property and construct the apartment complex according to plaintiff's plans. This suggestion never materialized. On July 15, 1971, Greenup, who had no listing contract, submitted to plaintiff an offer to buy the North Rampart property for $48,000 bearing Doley's signature. Greenup asserted at this time he knew nothing about the impending zoning change. Doley did not sign this form for the purpose of having this offer submitted nor did he authorize the offer. How Greenup came into possession of the signed incompleted standard real estate offer forms was that he was the realtor through whom Doley had submitted an offer to purchase property on North Broad Street several years earlier. At Greenup's request, he had signed several extra forms at the time the offer was to be prepared on the Broad Street property to allow for clerical errors on one or two efforts to prepare the offer. He never destroyed the unused signed forms. Plaintiff had no reason to suspect the offer was not genuine and he signed the document to evidence his acceptance on the same day.
On July 16, 1971, Greenup, who had attempted to elicit an offer on this property from Doley at a higher figure, contacted Doley to see if he would be interested in purchasing at $48,000. Doley indicated he would be interested in entering into further negotiations since the asking price had dropped into the $40,000s. When he arrived at Greenup's office at 5 p.m. that day, the realtor was not in, but his secretary *534 presented Doley with the fully executed offer on which his signature appeared. He accepted the document and immediately consulted his attorney to be advised as to whether he was liable under the contract. On July 22, 1971, Doley's counsel advised Greenup by letter that his client repudiated the unauthorized contract and spelled out the fraudulent circumstances above detailed as to how Greenup had come into possession of the signed incomplete forms.
By mid-August it was apparent Doley would not accept title; however, in October, plaintiff's attorney formally tendered title by scheduling an act of sale. Plaintiff's property, placed in the name of the Leaman Corporation for convenience as evidenced by a counter letter, could have been conveyed with no problem because an officer of the nominal owner, duly authorized by a resolution, was present to sign the act of sale.
The trial court concluded there was no contract because there was no meeting of the minds. We quote an excerpt from the written reasons for judgment:
"This Court is of the opinion that there was no meeting of the minds between the contracting parties when Exhibit Vales #1, their contract to buy and sell was executed. An integral and important part of the negotiations and their contract were the plans for a 22-unit apartment complex, which purchaser was led to believe he could build in the lots in question. He was not aware that the zoning regulations were to change within two weeks' time, and had the purchaser known that he had to:
1. Procure the usual and customary certificates and researches;
2. Examine title;
3. Arrange for and obtain financing;
4. Pass and record an act of sale;
5. File for and obtain a building permit; and
6. Start construction of the foundation and slab for the apartments, all on or before the expiration of 16 days or before July 31st, at which date the zone classifications were to change and no longer permit an apartment building to be constructed,
he, the purchaser would not have agreed to or signed the contract to buy and sell.
"Without a contract, there is no basis upon which any award can be made for attorneys' fees, etc."
The trial judge concluded neither the realtor nor the plaintiff committed fraud. Absent a finding of fraud, the evidence upon which the trial court predicated its conclusion was inadmissible because parol testimony, even if it is adduced without objection, cannot vary or add to the terms of a written agreement. LSA-C.C. arts. 2275 and 2276; Little v. Haik, 246 La. 121, 163 So.2d 558 (1964); Cookmeyer v. Cookmeyer, 274 So.2d 739 (La.App. 4th Cir. 1973).
The reasons assigned by the trial judge are based on inadmissible parol evidence that conflicts with and varies the terms of the written agreement to sell. In substance the trial judge places great emphasis on the impending change of the zoning classification; however, the offer prepared by the purchaser contains no reference to zoning or construction of multiple dwelling units, nor does it make either of these a condition precedent to accepting title.
We disagree with the trial court's evaluation of Greenup's testimony. We accept the testimony of LaNasa to the effect that Greenup knew the multidwelling zoning would expire in August as early as three months prior thereto despite his assertion he only learned this fact after the offer had been confected. We further believe Doley's version of how Greenup required Doley's signature on the offer. Doley, a stockbroker and experienced businessman, would have been interested in acquiring *535 this property for investment purposes. It is unlikely he would have offered to pay $14,000 cash and finance the balance at 8 percent when loans were obtainable at a lower interest rate at the time. In short, the evidence establishes the contract came into effect by the agent's misrepresentations to both the buyer and seller.
Because fraud was alleged and proven, we may consider the evidence under the well-recognized exception to the parol evidence rule that testimony is admissible to contradict written documents fraudulently confected.
Thus we affirm the judgment insofar as it dismisses the suit against Doley, but reversed insofar as it released Greenup from liability under the contract.
Doley, who never consented to the agreement but timely repudiated it after learning of its existence, is not liable under LSA-C.C. art. 1819, which provides:
"Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by
Error;
Fraud;
Violence;
Threats."
Greenup, however, is liable in that he fraudulently utilized one of the signed agreement to purchase forms that he obtained while acting as Doley's agent in connection with the acquisition of the Broad Street property. Though these forms were executed only for use in that transaction, Greenup exceeded his authority by submitting the offer to purchase now under consideration. LSA-C.C. art. 3010 imposes his liability:
"The attorney can not go beyond the limits of his procuration; whatever he does exceeding his power is null and void with regard to the principal, unless ratified by the latter, and the attorney is alone bound by it in his individual capacity."
Under the contract Greenup is liable for the $4,800 specified as liquidated damages and for attorney's fees and costs incurred in prosecuting this action. We limit the award of attorney's fees to $1,000 only because plaintiff's attorney testified he would be bound by the figure he requested in the prayer of his petition.
For the reasons assigned the judgment appealed from is reversed insofar as it dismissed plaintiff's suit against D. M. Greenup, doing business as D. M. Greenup Realty Company, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Edmund R. Vales, and against defendant D. M. Greenup, doing business as D. M. Greenup Realty Company, in the sum of $4,800 plus $1,000 attorney's fees and legal interest from judicial demand on both awards. In all other respects the judgment appealed from is affirmed. The defendant D. M. Greenup, doing business as D. M. Greenup Realty Company, is to pay all costs of this litigation.
Reversed in part; affirmed in part; and rendered.
NOTES
[1] American Employers Insurance Company was joined as a defendant on the theory it was a surety of Greenup; however, the policy of insurance was never introduced in evidence nor was it stipulated American did in fact issue a surety policy to Greenup.